JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 AUG 15 PM 1:24
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _LA_
DEPUTY

| | |
|---|---|
| YAZMIN GONZALEZ,<br><br>                  Plaintiff,<br><br>v.<br><br>KISCH LAW FIRM, PLLC a Texas Professional Limited Company, **CORDOBA LEGAL GROUP, LLC** a Florida Limited Liability Company, and **DEBT PAY GATEWAY INC.**, a California Corporation<br><br>                  Defendants. | § § § § § § § § § § § § § § § § § § |

EP22CV0280

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is YAZMIN GONZALEZ ("Gonzalez") a natural person, resident of the Western District of Texas, El Paso, County, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant KISCH LAW FIRM, PLLC ("Kisch") is a professional limited liability company organized and existing under the laws of Texas with a principal address of 6915 Kelsey Rae Court, STE 100, Houston, Texas 77069 and can be served via registered agent Kisch Law Firm, PLLC at 6915 Kelsey Rae Court, STE 100, Houston, Texas 77069.

3. Defendant CORDOBA LEGAL GROUP, LLC ("Cordoba") is a limited liability company organized and existing under the laws of Florida with a principal address of 102 NE 2nd Street, STE 252, Boca Raton, Florida 33432 and can be served via registered agent Alfredo Cordoba at 102 NE 2nd Street, STE 252, Boca Raton, Florida 33432.

4.      Defendant DEBT PAY GATEWAY, INC ("Gateway") is a corporation organized and existing under the laws of California with a principal address of 1900 E Golf Road, STE 550. Shaumburg, Illinois 60173 and can be served via registered agent VCORP Services CA, INC, 330 N. Brand Boulevard, STE 700, Glendale, California 91203

5.      Defendants Kisch, Cordoba, and Gateway are hereinafter collectively referred to as "Defendants."

## JURISDICTION AND VENUE

6.      **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

7.      **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8.      **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9.      This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

4

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.")

### The Texas Business and Commerce Code § 302.101

23. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas. Tx. Bus. & Com. Code § 302.101.

24. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code § 302.302(a)(d).

25. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

## FACTUAL ALLEGATIONS

26. Plaintiff's personal cell phone (915) 820-1859 has been successfully registered on the National Do Not Call Registry since March 26, 2022.

27. Defendant Kisch is a law firm that uses third parties to solicit their legal services through robocalls that violate the TCPA, National Bar Association code of ethics, and Texas State Bar Association code of ethics.

28. Kisch is aware of the TCPA, National Bar Association, and Texas State Bar Association prohibitions against solicitation but knowingly violates these prohibitions for economic gain.

29. Defendant Cordoba is an organization run by owner and registered agent Alfredo Cordoba.

30. Alfredo Cordoba is a licensed attorney in the state of Florida and uses Defendant Cordoba in an attempt to make solicitations for his legal services. These solicitations violate the TCPA, National Bar Association, and Florida State Bar Association prohibitions against solicitations.

31. Defendant Gateway is a company that knowingly processes payments from companies that solicit in violation of the TCPA. Defendant Gateway also knowingly and willfully processes payments in advance of services rendered, or debts are forgiven. This is an unlawful payment processing scheme that collects payments in advance of services rendered in violation of the TSR. 16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

32. Gateway, through its sister company, Debt Pay Pro, which has common ownership and

6

integration, facilitate lead generation, phone calls, and payment processing all through their proprietary software.

33. Defendant Gateway, in coordination with its sister company, Debt Pay Pro is a one-stop shop for all things debt related.

34. Defendant Gateway and its sister company Debt Pay Pro have provided the ability of debt elimination solicitation companies to "Push leads direct into your dialer service and receive updates in your CRM when calls are dispositioned." – Dialer Integration.

https://www.debtpaypro.com/debt-settlement-crm-software/

35. Defendant Gateway is the conduit through which Cordoba called Plaintiff when Cordoba called Plaintiff to solicit on behalf of Kisch.

36. On August 4, 2022, Plaintiff received the first of a series of phone calls from Defendants starting with 915-82. Plaintiff's phone number begins with 915-82. Defendants were intentionally spoofing the caller ID to make it appear that they were calling from a local number.

37. August 4, 2022, at 11:59 AM, Plaintiff received the first phone call. The call came from a person who appears to have been calling from outside of the United States. This person claimed he was calling from "American Debt" and calling to help Plaintiff eliminate her credit card debt.

38. Plaintiff informed the caller she was not interested in the services and to not call back.

39. On August 4, 2022, at 3:05 PM, Plaintiff received a second phone call from the same individual Plaintiff had previously told she was not interested. Plaintiff does not have credit card debt and again told the representative she was not interested.

40. Amazingly again, on August 4, 2022, at 4:28 PM, Plaintiff received yet another phone call from the same representative of the Defendants seeking to solicit her for credit card debt settlement.

41. Plaintiff was annoyed and pretended to be a coworker named "Mabel" she knew to have debt in order to ascertain who was ignoring her repeated requests to not be called.

42. Plaintiff spoke to the representative for 20 minutes and at no time did the representative identify the company he worked for or on whose behalf the calls were being made.

43. Plaintiff ended this phone call by telling the representative she would contact him if she were interested in the services and to not call back.

44. On August 5, 2022, at 11:35 AM, Plaintiff received a phone call from Defendants asking to speak to "Mabel." The call dropped after one minute.

45. On August 5, 2022, at 11:37 AM, the Defendants' representative immediately called Plaintiff back from the dropped call and asked for "Mabel." The call dropped after 15 seconds.

46. On August 5, 2022, at 2:14 PM, Defendants called Plaintiff yet again soliciting "credit card debt settlement." This time Plaintiff was determined to get to the bottom of the phone calls.

47. Plaintiff went through the call as "Mabel" for the sole purpose of identifying who was making the phone calls. The initial representative Plaintiff spoke to for nearly 35 minutes and never once identified the company he was calling on behalf of as "Cordoba Legal Group."

48. Plaintiff was asked about her debts, income, address, bank information, and other personally identifiable information, but never once offered to disclose who was behind the call.

49. It was only when Plaintiff was finally transferred to "George," the Cordoba representative, that revealed the true identity of one of the companies that commissioned the phone calls was revealed.

50. "George" finalized the contract and emailed Plaintiff a copy of the contract. The contract contained the information of Defendants Cordoba, Kisch, and Gateway. *See Exhibit A.*

51. Table below displays calls made to Plaintiff by Defendants:

8

52. TABLE A.

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 08/04/2022 | 11:59 AM | 915-821-1623 | Telemarketer from Defendants |
| 2 | 08/04/2022 | 3:05 PM | 915-821-1500 | Telemarketer from Defendants |
| 3 | 08/04/2022 | 4:28 PM | 915-821-1665 | Telemarketer from Defendants |
| 4 | 08/05/2022 | 11:35 AM | 915-821-1580 | Telemarketer called and asked for Mabel |
| 5 | 08/05/2022 | 11:37 AM | 915-821-1119 | Telemarketer called and asked for Mabel |
| 6 | 08/05/2022 | 2:14 PM | 915-821-1699 | Telemarketer from Defendants. Spoke to George from Cordoba who sent contract |

53. Each and every telemarketer Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

54. Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain a valid registration for any of the Defendants.

55. Defendants initiated numerous unsolicited telephone calls despite Plaintiff repeatedly telling the Defendants she was not interested in their services and to not call her.

56. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

57. Each and every call was placed without the maintenance of an internal do-not-call policy.

58. Each and every call failed to identify the telemarketers and parties they were calling on behalf of.

59. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

60. No emergency necessitated the calls.

61. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

62. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

63. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA

64. Defendants Cordoba and Kisch hired anonymous offshore telemarketers to make illegal solicitation sales calls on their behalf selling their "debt settlement" services.

## VICARIOUS LIABILITY OF DEFENDANTS

65. Defendant Kisch and Cordoba are vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

66. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831

10

(N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

67. Defendants Cordoba and Kisch gave express authority and apparent authority to the anonymous offshore telemarketers with full knowledge the administration of sales and solicitation of sales of the "debt settlement" services marketed as a result of the contract would be marketed using robocalls, spoofed caller IDs and in violation of 47 U.S.C. 227(c).

68. Defendants Cordoba and Kisch have ratified the conduct and behavior of the anonymous offshore telemarketers by repeatedly accepting contracts from consumers that originated through the use of TCPA violating anonymous phone calls. Cordoba and Kisch accept these contracts with the full knowledge and expectation Defendants would violate the TCPA.

69. Failure to hold Cordoba and Kisch responsible for the calls made on their behalf will be a signal to other TCPA violators that they can escape TCPA liability by hiring offshore and/or invisible entities to make phone calls on their behalf.

70. Not only does the seller have the responsibility to ensure TCPA compliance for calls made on their behalf, but they also have the responsibility to ensure those companies operate in the sunlight and are not taking active measures to avoid detection.

71. Defendant Gateway is liable because not only does Gateway accept payments for the processing of the ill-gotten gains, but Gateway and its sister company provide the means and platform by which the illegal robocalls are made.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

72. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to

11

prevent—a "nuisance and invasion of privacy."

73. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

74. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

75. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

### Plaintiff's cell phone is a residential phone

76. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone. Plaintiff maintains no landlines and uses the phone solely for personal, family, and household use. Plaintiff does not use her cell phone for any business purposes. Plaintiff's phone is registered in her name and she pays the bill from her personal accounts.

### Violations of the Texas Business and Commerce Code 305.053

77. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing unauthorized calls using an ATDS to a cell phone which violate 47 USC 227(b). The calls by the Defendants violated Texas law by placing unauthorized calls using an ATDS to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

78. The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

79. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a valid registration

certificate and bond on file with the Texas Secretary of State.

80. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## FIRST CLAIM FOR RELIEF
### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))
### (Against All Defendants)

81. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

82. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

83. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B)

84. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

85.     Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and Defendants name in the solicitations.

## SECOND CLAIM FOR RELIEF
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(C), and 47 C.F.R § 64.1200(C))
### (Against All Defendants)

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein

87.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

88.     Defendants made repeated calls Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

89.     Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the phone calls described above, in the amount of $500 per phone call.

90.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

91.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CLAIM FOR RELIEF

### Violations of The Texas Business and Commerce Code 305.053
### (Against All Defendants)

89.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs

90.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing illegal phone calls to Plaintiff's cellular telephone numbers without her prior express written consent in violation of 47 USC 227 et seq. Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

91.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

92.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)
### (Against All Defendants)

93.     Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

94.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101,** by making non-

registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

95. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

96. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Yazmin Gonzalez prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 6 calls.

E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 6 calls.

F. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

  H. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

  I. An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity

  J. Such further relief as the Court deems necessary, just, and proper.

August 15, 2022,      Respectfully submitted,

*[signature]*

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859